**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No. 1:14-cv-20474-GOODMAN**

**[CONSENT CASE]**

ENRIQUE MONTOYA, NEYSER COLONIA,
XI CHEN LAUREN, and MARK STUCKEY on
behalf of themselves and all others similarly situated,

Plaintiffs,

v.

PNC BANK, N.A., AMERICAN
SECURITY INSURANCE COMPANY, STANDARD
GUARANTY INSURANCE COMPANY, and
VOYAGER INDEMNITY INSURANCE COMPANY,

Defendants.
_______________________________________________/

**PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND FOR CERTIFICATION OF THE SETTLEMENT CLASS**

Plaintiffs and their counsel are proud to announce an extraordinary settlement that would provide significant monetary relief to mortgagors nationwide who had insurance coverage "force placed" on their properties by PNC Bank, N.A. ("PNC"), as well as injunctive relief that would effectively end the lender-placed insurance ("LPI" or "FPI") practices at issue in this case. This is the ninth FPI class action settlement presented in this district, and all eight before it have been granted preliminary approval. This Court should do the same.

The parties to this action coordinated their efforts with other plaintiffs' counsel pursuing claims against PNC and the Assurant Defendants, and those attorneys have helped negotiate this settlement. Under the settlement, Defendants will pay cash refunds of 12.5% of the total net annual premium to class members who paid the amounts charged them, and credit the same amount to class members who were charged for LPI, but never made payments. This settlement follows substantially similar LPI settlements that this Court has already approved, including those in *Saccoccio v. JPMorgan Chase Bank, N.A.*, No. 13-cv-21107, *Fladell v. Wells Fargo Bank, N.A.*, No. 13-cv-60721, *Diaz v. HSBC Bank (USA), N.A.*, No. 13-cv-21104, *Hamilton v. SunTrust Mortgage, Inc.*, No. 13-cv-60749, *Hall v. Bank of America, N.A.*, No. 12-cv-22700, *Williams v. Wells Fargo Bank, N.A.*, No. 11-cv-21233, and *Braynen v. Nationstar Mortgage LLC*, No. 14-cv-20726; but enhances the claims form, notice, and claim process for homeowners as in the recently settled *Lee v. Ocwen Loan Servicing, LLC*, No. 14-cv-60649.

The settlement's proposed benefits ae the result of hard-fought, arm's-length negotiations between the parties and their counsel under the direction of an experienced mediator, Rodney A. Max. Undersigned counsel were well-positioned to evaluate and negotiate this settlement because they have been investigating lenders' LPI practices since November 2010 and their investigation and the litigation that followed involved a review of more than three million

documents and dozens of depositions. Despite that work, Plaintiffs and the Settlement Class faced significant hurdles in litigating their claims to resolution. As such, and given the immediate and substantial benefits the settlement will provide, there is no question that the settlement falls within the range of reasonableness and warrants preliminary approval.

## FACTUAL BACKGROUND

### 1. Defendants' FPI Practices

The standard form mortgage agreements serviced by PNC require the borrower to maintain insurance on the property securing his or her mortgage loan, and provide that the lender or servicer may force new coverage on the property at the borrower's expense in the event of a lapse. (D.E. 127-1 ¶¶ 25.) The mortgage agreement authorizes the lender to obtain coverage to protect itself against risk of loss, and either advises the borrower that the cost of the coverage might significantly exceed that of the borrower's voluntary coverage or provides that the lender may pay costs necessary to protect its rights in the property. (*Id.*)

### 2. The Litigation

Plaintiff Montoya filed his original nationwide class action complaint on February 6, 2014. Plaintiff Colonia filed a class action complaint in the Southern District of Florida on March 25, 2014. Defendants moved to dismiss the claims in *Montoya* on April 8, 2014, but on April 23, 2014, Plaintiff Montoya amended the complaint to include Plaintiff Colonia's claims. Defendants moved to dismiss the new complaint on May 14, 2014, and the Court heard extensive argument on the motions on July 17, 2014. On August 27, 2014, the Court denied the motions in part and granted them in part, giving Plaintiffs leave to amend certain causes of action.

Plaintiffs filed the Second Amended Complaint on September 10, 2014. Two weeks later, Plaintiffs sought leave to file a third amendment to the complaint, adding the plaintiff and claims from *Lauren v. PNC Bank, N.A.*, No. 13-cv-00762, which was originally filed in the Western

District of Pennsylvania on June 4, 2013, and subsequently transferred to the Southern District of Ohio. All claims arose from PNC's LPI program, including arrangements regarding the forced placement of insurance coverage on mortgagors' properties and the inflated premiums and excessive coverage imposed on homeowners whose "voluntary" property insurance has lapsed. In the Third Amended Complaint, Plaintiffs asserted claims for breach of the implied covenant of good faith and fair dealing, unjust enrichment, breach of fiduciary duty, tortious interference with a business relationship, and violations of the New Jersey Consumer Fraud Act and federal RICO statute, and they now seek to certify a nationwide settlement class of all borrowers who paid for or still owe charges for hazard (including wind-only), flood, or flood gap LPI by PNC.

All Defendants moved to dismiss the Third Amended Complaint. The Court held a hearing on the motions on November 20, 2014, and on March 23, 2015, the Court granted them in part and denied them in part. Defendants then answered the Third Amended Complaint. In their answers, the Defendants denied any liability and asserted various affirmative defenses.

During this time, the parties conducted substantial discovery, with the Defendants producing tens of thousands of pages of documents. This was in addition to the more than two million pages of documents previously produced in other LPI litigation involving the Assurant Defendants before this Court and across the country. Each party took numerous depositions, including those of Defendants' representatives, the Named Plaintiffs, and both sides' experts. On August 8, 2014, the Court set this matter for trial on October 5, 2015.

On January 14, 2015, Plaintiffs filed their class certification motion, which was fully briefed as of March 3, 2015, and is still pending before the Court. The Assurant Defendants' motion to strike Plaintiffs' expert report and Plaintiffs' motion to exclude Defendants' expert, Sherri L. Scott, are also still pending.

On May 12, 2015, a formal mediation of this matter was held before mediator Rodney Max. In advance of and during the mediation, the Defendants provided Plaintiffs and Class Counsel with additional information concerning their LPI program, including aggregate LPI premium information nationwide for all programs. The mediation involved an in-person session, numerous pre-mediation conference calls, and the exchange of extensive written information concerning the claims raised in litigation. It also included the collection, production, and review of large volumes of electronically stored data.

The Parties reached a settlement-in-principle at the formal session, and the Parties' counsel agreed on a settlement outline that identified the material terms of the settlement. On June 12, 2015, Plaintiffs amended the complaint to include claims against Defendants Voyager Indemnity Insurance Company ("VIIC") and Standard Guaranty Insurance Company ("SGIC"), and to add Plaintiff Stuckey's claims relating to flood LPI. (D.E. 225-1).

The Parties announced their settlement to the Court on May 13, 2015, and the Court then stayed litigation pending settlement approval. (D.E. 222, 223.) The parties documented their agreement in a memorandum of understanding in the weeks that followed, and subsequently finalized and executed a settlement agreement, a copy of which is attached as **Exhibit A**.[1]

## 3. <u>The Settlement Terms and Agreement</u>

### A. *The Proposed Settlement Class*

The Settlement Agreement provides relief to "[a]ll borrowers in the United States who, within the Settlement Class Period … were charged by PNC under a hazard, flood, flood gap or

---

[1] The following documents are attached to the Settlement Agreement as exhibits: Class Notice (Exhibit A); Claim Form Instructions (Exhibit B); Claim Form (Exhibit C); proposed Preliminary Approval Order (Exhibit D); proposed Final Approval Order (Exhibit E); and proposed Final Judgment (Exhibit E-1).

wind-only LPI Policy for residential property," between January 1, 2008 through the preliminary approval date. (Ex. A ¶¶ 3.1, 3.2). This class will include borrowers whose homes are in foreclosure and short sale, and those granted a deed in lieu of foreclosure or loan modifications.[2]

**B. *Monetary and Injunctive Relief***

The Settlement Agreement affords members of the Settlement Class significant monetary and injunctive relief. (*Id.* ¶ 4.) The monetary relief will compensate class members for a significant part of the inflated portion of the amounts that they either paid or were charged for force-placed coverage. All Settlement Class members who paid any portion of the amounts owed for LPI and submit a valid claim form will recover 12.5% of the net premium *charged* to them during the class period, less any refund credited them. (*Id.* ¶ 4.6.3.) The 12.5% payment is taken from the entire premium, rather than the "excess" or inflated portion of the premium, since a considerable portion of the premiums charged, in fact, was applied to pay for coverage. Qualified members who paid any portion of their premiums will receive a check from PNC for the full settlement amount. (*Id.*). Settlement Class members who were charged but did not pay for LPI will receive a check or a credit to their PNC account in the amount of 12.5% of the LPI policy's net premium, the distribution method being at PNC's discretion. (*Id.* ¶ 4.6.2.)

The injunctive relief provided by the Settlement Agreement will put an end to the LPI practices that are the subject of this lawsuit. The Settlement Agreement enjoins PNC and the Assurant Defendants from continuing to charge what Plaintiffs allege are inflated premiums for LPI. For a period of five years following the Final Settlement Date, PNC will accept no financial interest in the placement of LPI other than the premium itself and the protection

[2] By contrast, the court in *Williams v. Wells Fargo Bank, N.A.*, No. 11-cv-21233 (S.D. Fla.), specifically excluded certain categories that are included in this settlement from the Florida class it certified in February 2012. *See Williams*, (D.E. 211).

afforded it by the insurance coverage. (*Id.* ¶ 4.2.1.) The Settlement Agreement prohibits PNC and its affiliated companies from accepting all or a portion of any commission paid on LPI; entering into quota-share reinsurance arrangements with Assurant or any other insurer; accepting payments from any forced-placed insurer or vendor for administrative or other services related to forced-placed insurance; and placing LPI through an PNC-affiliated insurer or vendor. (*Id.* ¶¶ 4.2.1, 4.2.2.) The Assurant Defendants will similarly be prohibited for five years from providing LPI commissions to PNC-affiliated agents or brokers, quota-share reinsurance arrangements, payments for administrative or other services associated with FPI policies, and accepting from PNC payments for below-cost or free outsourced services. (*Id.* ¶ 4.3.)

The Settlement also requires PNC to establish LPI coverage at the last-known coverage amount or the unpaid principal balance on a borrower's loan, so that LPI coverage moving forward bears some relation to the value of the interest it protects. (*Id.* ¶ 4.2.1.) PNC will also advance funds in the event of a lapse to continue coverage under the borrower's voluntary policy, (*id.*), thus further ensuring that the cost of coverage bears some relation to the collateral's value and also reducing the number of LPI policies issued by PNC and Assurant. Finally, the Settlement requires PNC to refund any amounts due to the borrower once voluntary insurance is put back in place within fifteen days of receipt of evidence of voluntary coverage. (*Id.*)

**C. *Release of Claims against Defendants***

In exchange for the relief provided by the Settlement, members of the Settlement Class will release PNC and the Assurant Defendants, as well as their all other entities included in the definition of "Released Persons" set forth in the Settlement Agreement (Ex. A ¶ 2.43), from all claims, actions, causes of action, suits, debts, sums of money, payments, obligations, reckonings, promises, damages, penalties, attorney's fees and costs, liens, judgments, and demands "that

were or could have been sought or alleged in the Litigation or that relate, concern, arise from, or pertain in any way to the Released Persons' conduct, policies, or practices concerning PNC's placement, or the Assurant Defendants' issuance, of LPI Policies during the Settlement Class Period, including but not limited to conduct, policies or practices concerning LPI Policies or to charges for PNC's Placement of LPI Policies during the Settlement Class Period. (*Id.* ¶ 10.1.)

**D.** ***Class Notice and Claims Process***

Settlement Class members will receive notice of the settlement, instructions, and a claim form by first-class mail at their last-known mailing address in the forms attached to the Settlement Agreement as Exhibits A, B, and C, respectively, assuming they are approved by the Court. (*Id.* ¶ 6.1). Class members will receive both English- and Spanish-language versions of these documents. (*Id.*) The notice will be mailed no fewer than 90 days before the date set for the final approval hearing. (*Id.*). The Claims Administrator shall perform a search of the National Change of Address database for each mailing address attached to a notice that is returned as undeliverable. (*Id.*). The Settlement Administrator will also establish a website on which Settlement Class members may download and print or e-sign and upload a claim form and review the Settlement Agreement and its exhibits. (*Id.* ¶ 6.2.). The parties will also cause notice of the settlement to be published in *USA Today* and advertised on the internet. (*Id.* ¶¶ 6.3, 6.4.) The notice will provide a toll-free number to call for settlement information. (*Id.* ¶ 6.3). Members may opt out or object by following the prescribed process. (*Id. ¶¶* 11, 12.)

To obtain relief from Defendants, Settlement Class members will be required to submit the claim form on or before a deadline that will be set by mutual agreement of the Parties. (*Id.* ¶¶ 2.8, 7.1). The claims will be reviewed and approved by the Settlement Administrator, who will then make a determination of the amount owed each class member using Defendants'

electronic records, and then have 180 days after the Final Settlement Date to distribute the monetary relief provided for by the Settlement. (*Id.* ¶¶ 7.2, 7.3, 7.3.3.) The Settlement Administrator will advise Class Counsel on a weekly basis of any claims deemed invalid before those claims are denied so that Class Counsel may follow up with the borrower to cure any deficiency in his or her submission. (*Id.* ¶ 7.2.1.) The parties agree to attempt to resolve any disputes related to the denial of class member claims in good faith.

A claims-made process is appropriate here, as PNC and the Assurant Defendants have represented that they cannot, on a system-wide basis and without an individualized review, determine the amount of force-placed premiums paid or currently owed by a borrower. In keeping with the Court's recommendation in another matter, Class Counsel confirmed these representations with the deposition of PNC representative Charles Abourezk on June 16, 2015.[3]

**E. *Class Counsel Fees and Expenses and Named Plaintiff Case Contribution Award***

The Parties have stipulated that the undersigned law firms will serve as Class Counsel. (*Id.* ¶ 2.15). Class Counsel's application for fees and expenses for all of the law firms involved will not exceed $4.75 million. (*Id.* ¶ 15.1.) Defendants will also pay the named plaintiffs service awards not to exceed $5,000.00. (*Id.* ¶ 15.4.) The Court will consider these awards separate and apart from the fairness, reasonableness, and adequacy of the settlement. (*Id.* ¶ 15.5.)

***G. Final Approval and Objections***

Class members may object to the settlement no later than 30 days prior to the Final Approval Hearing, or as the Court may otherwise direct. (*Id.* ¶ 2.34.) The Motion for Attorneys'

[3] Plaintiffs are also following the Court's recommendation in that matter, *Lee v. Ocwen Loan Servicing, LLC*, No. 14-cv-60649, and will take the deposition of Jason Jastrzemski during the week of June 22, 2015.

Fees shall be filed 10 days prior to the deadline for filing objections and the Parties shall respond to any objections within 10 days prior to the Final Approval Hearing.

## LEGAL ARGUMENT

### I. THE COURT SHOULD PRELIMINARILY APPROVE THE SETTLEMENT.

Settlement "has special importance in class actions with their notable uncertainty, difficulties of proof, and length. Settlements of complex cases contribute greatly to the efficient use of judicial resources, and achieve the speedy resolution of justice[.]" *Turner v. Gen. Elec. Co.*, No. 2:05-CV-186-FTM-99DNF, 2006 WL 2620275, at *2 (M.D. Fla. Sept. 13, 2006). For these reasons, "[p]ublic policy strongly favors the pretrial settlement of class action lawsuits." *In re U.S. Oil & Gas Litig.,* 967 F.2d 489, 493 (11th Cir.1992). "Approval of a class action settlement is a two-step process." *Fresco v. Auto Data Direct, Inc.*, No. 03-cv-61063, 2007 WL 2330895, at *4 (S.D. Fla. May 14, 2007). Preliminary approval is the first step, requiring the Court to "make a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms." *Id.* In the second step, after notice to the class and time and opportunity for absent class members to object or otherwise be heard, the court considers whether to grant final approval. *Smith v. Wm. Wrigley Jr. Co.*, 2010 WL 240119, at *2 (S.D. Fla. June 15, 2010).

The standard for preliminary approval of a class action settlement is not high—a proposed settlement should be preliminarily approved if it falls "within the range of possible approval" or if there is "probable cause" to notify the class of the proposed settlement and "to hold a full-scale hearing on its fairness[.]" *In re Mid-Atl. Toyota Antitrust Litig*., 564 F. Supp. 1379, 1384 (D. Md. 1983) (citation omitted). Applying this standard, this Court has granted preliminary approval of settlements with similar facts in *Williams*, *Saccoccio*, *Fladell*, *Diaz*, *Hall*, and *Hamilton*, which have all now obtained final approval.

**A. The Settlement Is the Product of Good Faith, Informed, and Arm's-Length Negotiations among Experienced Counsel.**

At the preliminary approval stage, district courts consider whether the proposed settlement appears to be "'the result of informed, good-faith, arms'-length negotiation between the parties and their capable and experienced counsel' and not 'the result of collusion[.]'" *In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d 1330, 1341 (S.D. Fla. 2011). The settlement terms in this case are the product of significant give and take by the settling parties, and were negotiated at arm's length. The parties participated in an intensive mediation with Rodney A. Max, a well-respected mediator with significant experience resolving complex suits. Mr. Max and the parties participated in an in-person session on May 12, 2015, as well as weeks of continuing negotiation by telephone and email. The very fact of Mr. Max's involvement weighs in favor of preliminary approval.[4] *See, e.g., Lobatz v. U.S. In re Educ. Testing Serv. Praxis Principles of Learning & Teaching, Grades 7-12 Litig.*, 447 F. Supp. 2d 612, 619-20 (E.D. La. 2006) (use of court-appointed special master to oversee mediation evidenced procedural fairness of negotiating process); *In re WorldCom, Inc. ERISA Litig.*, 2004 WL 2338151, at *6 (S.D.N.Y. 2004) (that "[a] respected and dedicated judicial officer presided over the lengthy discussions from which this settlement emerged" belied any suggestion of collusion).

The parties' extensive negotiations were also informed by considerable discovery. Defendants produced tens of thousands of pages of documents, and both the Plaintiffs and Defendants were deposed. Defendants also took third-party discovery, and both parties took expert discovery. This was in addition to millions of pages of documents produced in other LPI litigation involving the Assurant Defendants, Class Counsel, and their co-counsel. *See, e.g., Kunzelmann v. Wells Fargo Bank, N.A.*, No. 11-cv-81373-DMM (S.D. Fla.); *Fladell*, No. 13-cv-

[4] Mr. Max has prepared a declaration in which he attests that the mediation was conducted at arms-length, among other things. A copy of Mr. Max's declaration is attached as **Exhibit B.**

60721; *Popkin v. Citibank, N.A.*, No. 13-cv-60722 (S.D. Fla.); *Saccoccio*, No. 13-cv-21107. More than thirty depositions have been taken or used in those cases.

**B. The Settlement Falls Squarely within the Range of Reasonableness.**

The Settlement provides considerable monetary and injunctive relief to the Settlement Class, and falls well within the range of possible approval.

**1. Monetary Relief**

The Settlement Agreement provides significant monetary benefits. All Settlement Class members who paid LPI charges are eligible to receive a check for 12.5% of the net premium charged as long as the they paid a portion of the premium, and all class members who were charged for LPI but did not pay any premium will receive 12.5% of the net premium charged by check or a credit to their escrow account as described above. (Ex. A ¶ 4.6). This percentage will be of the entire premium charged, *not* a percentage of the premium charged in excess of the actual or competitive cost of coverage. (*Id.*)

The 12.5% of the premium returned to Settlement Class members mirrors a 12.5% reduction recently approved as reasonable by more than forty-five state regulators as a new lender-placed product. These regulators have approved as reasonable an LPI hazard product developed by Assurant that would reduce the rates used to calculate premiums charged to lenders (and then passed in to borrowers) by up to 12.5%— at most—if the lender agrees to forego the commissions and reinsurance profits that are the subject of this lawsuit. This settlement will retroactively provide Settlement Class Members with the equivalent of that maximum discount.

Federal courts hold that settlements providing the class with a percentage of the recovery sought in litigation are reasonable in light of the attendant risks of litigation. *See, e.g., Johnson v. Brennan*, No. 10-cv-4712, 2011 WL 4357376 (S.D.N.Y. Sept. 16, 2011) ("[T]here is no

reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery."); *Behrens*, 118 F.R.D. at 542-43 (approving recovery of $.20 per share where desired recovery was $3.50 a share because "the fact that a proposed settlement amounts to only a fraction of the possible recovery does not mean the settlement is inadequate or unfair"); *Fisher Bros., Inc. v. Mueller Brass Co.*, 630 F. Supp. 493, 499 (E.D. Pa. 1985) (approving settlement providing recovery of 0.2% of sales). "Moreover, when settlement assures immediate payment of substantial amounts to class members, even if it means sacrificing speculative payment of a hypothetically larger amount years down the road, settlement is reasonable[.]" *Johnson*, 2011 WL 4357376, at *12.

Plaintiffs and the Settlement Class faced significant hurdles in litigating their claims to resolution, including overcoming Defendants' filed-rate doctrine and other defenses. Each class member stands to recover hundreds, if not thousands, of dollars as a result of the settlement. The settlement's monetary recovery falls well within the range of reasonableness.

**2. Injunctive Relief**

Once approved, the settlement will also enjoin PNC and the Assurant Defendants for five years from accepting a financial interest in the placement of LPI beyond the premium itself and the protection afforded by the policy on the properties that serve as the collateral for the loans that they extend to borrowers. (Ex. A ¶¶ 4.2, 4.3). This means that PNC will no longer collect, and the Assurant Defendants will no longer pay, *inter alia*, LPI commissions to PNC-affiliated agents or brokers, revenue arising from quota-share reinsurance arrangements, or payments for administrative or other services associated with placement of LPI. (*Id.*) The Settlement Agreement effectively prohibits PNC and the Assurant Defendants from continuing to implement the practices complained of. There can be no question that this result is reasonable.

**C. Plaintiffs and the Settlement Class Will Avoid Considerable Litigation Hurdles.**

Any evaluation of the settlement benefits must be tempered by the recognition that any compromise involves concessions by the parties. Indeed, "the very essence of a settlement is compromise, 'a yielding of absolutes and an abandoning of highest hopes.'" *Officers for Civil Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 624 (9th Cir. 1982) (citations omitted). Had litigation continued, Plaintiffs and Settlement Class members would have risked not prevailing on their claims. In this matter, the Defendants raised numerous defenses to Plaintiffs' claims, including application of the filed-rate doctrine which this Court has recognized as potentially dispositive. *See, e.g., Montoya*, 2014 U.S. Dist. LEXIS 119464 (noting that given recent developments, "Plaintiffs' force-placed insurance claims confront a blustery legal atmosphere"); *see also Fladell*, (May 26, 2013 Hrg. Tr. at 12:23-25, 21:17-21, 92:2-3, 74:4-9, 92:21-23); *Kunzelmann*, 2013 WL 139913 (S.D. Fla. Jan. 10, 2013) (declining to certify nationwide class and noting obstacles posed by filed-rate doctrine, among other things).

**D. Class Counsel Believes the Settlement Is Reasonable.**

Significant weight should be attributed to the belief of experienced counsel that the negotiated settlement is in the best interest of the class. *See In re Coordinated Pretrial Proceedings in Antibiotic Antitrust Actions*, 410 F. Supp. 659, 666 (D. Minn. 1974) (recommendation of experienced counsel is entitled to great weight); *DeBoer v. Mellon Mortg. Co.*, 64 F.3d 1171, 1178 (8th Cir. 1995). "The views of the parties to the settlement must … be considered." Counsel here have litigated numerous FPI class actions over the course of almost four years, and fully support the settlement. They certified the first FPI class in Florida in *Williams*, No. 11-cv-21233, and then settled that case; litigated the motion for class certification in *Kunzelmann*; briefed and argued five motions to centralize FPI litigation in nationwide MDLs; settled claims against Chase, HSBC, Wells Fargo, Bank of America, SunTrust, Nationstar,

Ocwen and their force-placed insurers on behalf of nationwide classes in *Saccoccio*, *Diaz*, *Fladell*, *Hall*, *Hamilton*, *Lee*, and *Braynen*, and secured final approval of five of those settlements, and are awaiting decision the other two; and are currently litigating five additional cases against other major mortgage lenders. *See Almanzar v. Select Portfolio Servicing, Inc.*, No. 14-cv-22586 (S.D. Fla.); *Soler v. Indymac Servs.*, No. 14-cv-22541 (S.D. Fla.); *Wilson v. Everbank*, *N.A.*, No. 14-cv-22264 (S.D. Fla.); *Jackson v. U.S. Bank, N.A.*, No. 14-cv-21252 (S.D. Fla.); *Circeo-Loudon v. Green Tree Servicing, LLC*, No. 14-cv-21384 (S.D. Fla.). Based on this experience, and decades more with class action lawsuits, it is Class Counsel's informed opinion that, given the uncertainty and expense of pursuing these claims through trial, the settlement is fair, reasonable, adequate, and in the best interests of the Settlement Class.

## II. THE COURT SHOULD CERTIFY THE PROPOSED SETTLEMENT CLASS.

"It is well established that a class may be certified solely for purposes of settlement [if] a settlement is reached before a litigated determination of the class certification issue." *In re Checking Account Overdraft Litig.*, 275 F.R.D. at 659 (brackets in original). "In deciding whether to provisionally certify a settlement class, a court must consider the same factors that it would consider in connection with a proposed litigation class," save manageability, "since the settlement, if approved, would obviate the need for a trial." *Id.*

### A. The Settlement Class Meets the Four Requirements of Rule 23(a).

The policies underlying the class action rule dictate that Rule 23(a) should be liberally construed. *See Walco Invs., Inc. v. Thenen*, 168 F.R.D. 315, 323 (S.D. Fla. 1996).

#### 1. The Settlement Class Is Sufficiently Numerous.

Rule 23(a)(1) requires Plaintiffs to show that the proposed class is so numerous that joinder of all members would be impracticable. *See* Fed. R. Civ. P. 23(a)(1). "While there is no

fixed rule, generally a class size [of] less than twenty-one is inadequate, while a class size of more than forty is adequate." *Williams*, 2012 WL 566067, at *4 (citing *Cheney v. Cyberguard Corp.,* 213 F.R.D. 484,489-90 (S.D. Fla. 2003)); *see, e.g., Anderson v. Bank of S., N.A.*, 118 F.R.D. 136, 145 (M.D. Fla. 1987) ("[T]he size of the class and geographic location of the would-be class members are relevant to any consideration of practicality."); *Checking Overdraft Litig.,* 2011 WL 3158998, at *2. The proposed class in this case well exceeds the minimum threshold. *See Cox,* 784 F.2d at 1553. The numerosity requirement is satisfied here.

**2. Questions of Law and Fact Are Common to All Settlement Class Members.**

Rule 23(a)(2) requires class action plaintiffs to identify questions of law or fact common to the proposed class. *See* Fed. R. Civ. P. 23(a)(2). "The threshold for commonality is not high." *Cheney,* 213 F.R.D. at 490. Commonality requires a showing that the class members' claims "depend on a common contention" and that the class members have "suffered the same injury." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011). "[F]or purposes of Rule 23(a)(2), even a single [common] question will do[,]" *id.* at 2556 (brackets in original), and "where a common scheme of conduct has been alleged, the commonality requirement should be satisfied." *Checking Overdraft,* 2011 WL 3158998, at *4.

Plaintiffs' claims here depend on the common contention that Defendants conceived and implemented a scheme to manipulate and artificially inflate LPI premiums that they would then charge to the borrower. All members of the putative class were injured in the same manner: they were charged LPI premiums that included inflated costs, and have paid or now owe amounts in excess of what their mortgage agreements allowed. *See Williams,* 2012 WL 566067, at *5 (finding commonality where "all members of the propose class were injured in the same manner, namely by being charged inflated premiums for the FPI").

Thus, while only one question of law *or* fact is required, many common questions capable of class-wide resolution arise here, including whether Defendants inflated FPI charges; PNC breached the implied covenant by entering into an exclusive arrangement to do so; and Assurant was unjustly enriched. These issues satisfy commonality. *See, e.g., id.* at *5 ("The determination of the truth or falsity of the Plaintiff's allegations that Wells Fargo and QBE engaged in a scheme to force-place insurance with inflated and excessive premiums will resolve an issue that is central to the validity of each one of the claims in one stroke.").

**3. Plaintiffs' Claims Are Typical of Those of the Settlement Class.**

Rule 23(a)(3) requires Plaintiffs to demonstrate that their claims are typical of those held by the proposed class. *See* Fed. R. Civ. P. 23(a)(3). Typicality and commonality are related, with commonality referring to "the group characteristics of the class as a whole" and typicality focusing on the named plaintiff's claims in relation to the class. *Terazosin Hydrochloride Antitrust Litig.*, 220 F.R.D. at 686 n.23. "Any atypicality or conflict between the named Plaintiff's claims and those of the class must be clear and must be such that the interests of the class are placed in significant jeopardy." *Cheney,* 213 F.R.D. at 491.

Plaintiffs' claims in this case arise from the same course of conduct and are based on the same legal theories as those brought on behalf of the proposed class. Plaintiffs and every class member took mortgage loans from PNC or its predecessors that were governed by common and materially uniform agreements. As a result, once their voluntary policies lapsed, Plaintiffs and every other member of the proposed class were charged artificially inflated LPI premiums by Defendants. Plaintiffs and the class seek redress through common claims for breach of the implied covenant, unjust enrichment, tortious interference, breach of fiduciary duty, and violations of the New Jersey Consumer Fraud Act and the federal RICO statute.

**4. Plaintiffs and Their Counsel Are Adequate Representatives.**

To satisfy Rule 23(a)(4), the representative parties must "fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(a)(4). This requirement is satisfied when the class representatives have (1) no interests antagonistic to the rest of the class and (2) counsel who are "qualified, experienced, and generally able to conduct the proposed litigation." *Cheney*, 213 F.R.D. at 495. "Adequate representation is presumed in the absence of contrary evidence." *Association for Disabled Ams., Inc. v. Amoco Oil Co.*, 211 F.R.D. 457, 464 (S.D. Fla. 2002).

**a. Plaintiffs Do Not Have Interests Antagonistic to Settlement Class Members.**

Adequacy exists where a class representative shares common interests with the class and seeks the same type of relief for himself and the settlement class members. *See Tefel v. Reno*, 972 F. Supp. 608, 617 (S.D. Fla. 1997); *Kreuzfeld A.G. v. Carnehammar*, 138 F.R.D. 594, 600 (S.D. Fla. 1991). Here, Plaintiffs have no interest antagonistic to those held by the Settlement Class. The class definition includes only those who were subject to Defendants' FPI scheme. (Ex. A ¶ 2.47). All class members had LPI forced on their homes and were charged inflated amounts for coverage. (*Id.*) Thus, the critical issues in this case—the existence, implementation, and unlawfulness of Defendants' FPI scheme—are common issues. Plaintiffs and absent class members share a common goal: to recover the inflated portion of the amounts charged for LPI. Plaintiffs have satisfied Rule 23(a)(4). *See Williams*, 2012 WL 566067, at *6-7.

**b. Settlement Class Counsel Are Qualified and Experienced.**

The attorneys who seek to represent the Settlement Class in this case are highly qualified to serve as class counsel, have been investigating FPI claims for almost four years, and have served as lead and co-lead counsel in some of the largest class actions in the country, as well as insurance-related complex cases. The three law firms that Plaintiffs seek to name as Class

Counsel in this action are Kozyak Tropin & Throckmorton, LLP, Podhurst Orseck, P.A., and Harke Clasby & Bushman, LLP. These firms have successfully prosecuted consumer class actions and their law firms are well respected in the communities that they serve.

**B. The Settlement Class Meets the Requirements of Rule 23(b)(3).**

In addition to meeting the four requirements of Rule 23(a), a plaintiff seeking class certification must satisfy one subsection of Rule 23(b). *Cheney*, 213 F.R.D. at 489. Plaintiff here seeks certification under Rule 23(b)(3), under which certification is appropriate if (1) common questions of law or fact predominate over those affecting only individual class members and (2) class treatment is superior to other adjudication methods. *See* Fed. R. Civ. P. 23(b)(3). The latter question implicates manageability concerns, which do not bear on certification of a settlement class. *See Checking Account Overdraft Litig.*, 275 F.R.D. at 659.

Here, "irrespective of the individual issues which may arise, the focus of the litigation concerns the alleged common course of unfair conduct embodied in [Defendants'] scheme to" manipulate FPI charges to the proposed class. *Checking Overdraft Litig.,* 2011 WL 3158998, at *7. Proof of the scheme may be made by evidence that would remain the same regardless of class size or composition. Common issues would predominate over any individual issue.

Moreover, a comprehensive resolution of the Settlement Class members' claims in this action would be far superior to litigating each of their claims separately. "Since the damage amounts allegedly owed to each individual [borrower] are relatively low—especially as compared to the costs of prosecuting the types of claims in this case involving complex, multi-level business transactions between sophisticated defendants—the economic reality is that many of the class members would never be able to prosecute their claims through individual lawsuits." *Williams*, 280 F.R.D. at 675. Accordingly, the Court should certify the proposed class.

## III. THE COURT SHOULD APPROVE THE PROPOSED CLASS NOTICE.

Federal Rule of Civil Procedure 23(e)(1) provides that the "court must direct notice in a reasonable manner to all class members who would be bound by the proposal." Class notice should be "reasonably calculated, under the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).

The parties' proposed notice plan readily meets this standard. The Settlement Agreement provides that the Settlement Administrator shall distribute class notice by first-class mail in the form attached as Exhibit A to the Settlement Agreement to all identifiable class members no fewer than 90 days before the final approval hearing. (Ex. A ¶ 6.1). The Settlement also provides for internet notice and a toll-free number through which Settlement Class members can acquire information, and allows class members to submit claims online. (*Id.* ¶¶ 6.2, 6.3 & Exs.).

The notice itself also satisfies the requirements of the Federal Rules. It provides, among other things, a clear definition of the Class; a description of the underlying lawsuit and the material terms of the Settlement; instructions as to how Settlement Class members may make a claim and determine whether they are eligible to do so; an explanation of objection and opt-out rights and a date by which Settlement Class members may opt out, and information regarding how to do so; instructions as to how to object to the Settlement and an objection deadline; the date on which the Court will hold a Final Approval Hearing; and the internet address and toll-free number from which class members may obtain additional information about the Settlement and its terms. (*Id.* at Ex. A.) The claim form and instructions also provide clear and comprehensive instructions as to who is eligible for relief and how to make a claim. (*Id.* at Ex. B.)

## IV. THE COURT SHOULD APPOINT THE UNDERSIGNED FIRMS AS CLASS COUNSEL.

The parties have defined Class Counsel to include the three undersigned law firms. (Ex. A ¶ 2.14). Plaintiffs and the undersigned now move the Court to appoint these three firms as Settlement Class Counsel, as it has done in five other FPI actions. Undersigned counsel have significant experience litigating these cases, having represented plaintiffs in actions against fourteen major mortgage lenders, the Assurant Defendants, and QBE, the other major force-placed insurer that contracts with major lenders to issue force-placed coverage.

## V. THE COURT SHOULD SCHEDULE A FINAL APPROVAL HEARING.

Plaintiffs request that the Court schedule the Final Approval Hearing at its earliest convenience no fewer than 150 days after entry of an order preliminarily approving the Settlement. Should the Court grant this Motion, Plaintiffs will file their final approval motion on a date set by the Court, which shall be no earlier than ninety days after service of class notice, and Class Counsel will file their fee application at least ten days prior to any objection or opt-out deadline.

## CONCLUSION

The Court should enter an order granting preliminary approval of the settlement.

Respectfully submitted this 17th day of June, 2015.

By: /s/ Adam M. Moskowitz


| | |
|---|---|
| Adam M. Moskowitz, Esq.<br>Florida Bar No. 984280<br>amm@kttlaw.com<br>Thomas A. Tucker Ronzetti, Esq.<br>Florida Bar No. 965723<br>tr@kttlaw.com<br>Rachel Sullivan, Esq.<br>Florida Bar No. 815640<br>rs@kttlaw.com<br>Robert J. Neary, Esq. | Aaron S. Podhurst, Esq.<br>Florida Bar No. 63606<br>apodhurst@podhurst.com<br>Peter Prieto, Esq.<br>Florida Bar No. 501492<br>pprieto@podhurst.com<br>John Gravante, III, Esq.<br>Florida Bar No. 617113<br>jgravante@podhurst.com<br>Matthew Weinshall |

| | |
|---|---|
| Florida Bar No. 81712<br>rn@kttlaw.com<br>**KOZYAK TROPIN & THROCKMORTON LLP**<br>2525 Ponce de Leon Blvd., 9th Floor<br>Coral Gables, FL 33134<br>Telephone: (305) 372-1800<br>Facsimile: (305) 372-3508<br>*Counsel for Plaintiff* | Florida Bar No. 84783<br>mweinshall@podhurst.com<br>**PODHURST ORSECK, P.A.**<br>City National Bank Building<br>25 West Flagler Street, Suite 800<br>Miami, Florida 33130<br>Telephone: 305-358-2800<br>Facsimile: 305-358-2382<br>*Counsel for Plaintiff* |
| Lance A. Harke, Esq.<br>Florida Bar No. 863599<br>lharke@harkeclasby.com<br>Sarah Engel, Esq.<br>Florida Bar No. 991030<br>sengel@harkeclasby.com<br>Howard M. Bushman, Esq.<br>Florida Bar No. 0364230<br>hbushman@harkeclasby.com<br>**HARKE CLASBY & BUSHMAN LLP**<br>9699 NE Second Avenue<br>Miami Shores, Florida 33138<br>Telephone: (305) 536-8220<br>Facsimile: (305) 536-8229<br>*Counsel for Plaintiff* | |

**CERTIFICATE OF SERVICE**

I hereby certify that a true copy of the foregoing was filed electronically via CM/ECF on the 17th day of June, 2015 and served by the same means on all counsel of record.

By: /s/ Adam M. Moskowitz