**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No. 1:14-cv-20474-GOODMAN**

**[CONSENT CASE]**

ENRIQUE MONTOYA,
NEYSER COLONIA, and
XI CHEN LAUREN on behalf
of themselves and all others
similarly situated,

Plaintiffs,

v.

PNC BANK, N.A. and AMERICAN
SECURITY INSURANCE COMPANY,

Defendants.
_____________________________________/

**DECLARATION OF RODNEY A. MAX**

I, Rodney A. Max, pursuant to 28 U.S.C. §1746, declare as follows:

1. My name is Rodney A. Max. I am over the age of 18 and I am competent to give testimony. The statements contained in this declaration are based upon my own personal knowledge and are true and correct.

## I. BACKGROUND AND EXPERIENCE

2. I graduated in 1975 *cum laude* from the Cumberland School of Law. Upon graduation, I became licensed to practice law in the state of Alabama (1975) and the state of Florida (1976). I am currently a member of Upchurch, Watson, White & Max Mediation Group, Inc.

3. Since 1992, my practice has focused exclusively on alternative dispute resolution,

with an emphasis on mediation.

4. I have national mediation experience and have mediated in 34 states and the District of Columbia. I have been selected to conduct mediations by leading plaintiffs' attorneys, defense counsel and in-house counsel for national and international manufacturers, distributors, transporters, insurers and service provider companies and have been appointed by federal and state judges from coast to coast.

5. I have mediated cases involving consumer fraud, wrongful death and personal injury, breach of contract, bad faith, securities (NASD), antitrust, patent and trademark, Lanham Act, construction, property, environmental, fraud and suppression, banking, estate and trusts, stockholder disputes, partnership disputes, and derivative claims. I have mediated numerous national and statewide class actions as well as numerous mass tort, contract and statutory warranty cases. I have convened parties for mediation before suits have been filed, as well as mediated cases on appeal.

6. Over the course of my career, I have conducted well over 5,000 mediations involving over 10,000 cases.

7. I am a past President of the American College of Civil Trial Mediators. Additionally, I am a member of the Alabama Center of Dispute Resolution, the Florida Academy of Professional Mediators and the Dispute Resolution Section of the American Bar Association.

8. I have played a major role in establishing rules, standards and ethics for mediators. I initiated the Mediation Process and Practice Program at Cumberland School of Law as an adjunct professor from 1997-2002. Additionally, I have lectured at CLE seminars for attorneys or those who have sought training on mediation at the following courses:

- American College of Attorney Mediators - Multi Party Mediation, The Business of Mediation;

- American Bar Association Dispute Resolution Section – Multi Party Mediation, Ethics of Mediation, The Business of Mediation;
- New Jersey Bar Association - The Practice of Mediation;
- Alabama Bar Association - Multi Party Mediation; Mediation Dissected;
- Florida Academy of Civil Trial Mediators- Opening Statements;
- University of Florida - Designing The Mediation; and
- The International Academy of Mediators- Ethics of Mediation.

9. I have also published a number of articles. The following abridged list is a sampling: *Mediation Comes of Age,* published in *The American Journal of Trial Advocacy,* Volume 23, Issue 3 (Spring 2000); *Multiparty Mediation,* published in *The American Journal of Trial Advocacy,* Volume 23, Issue 2 (Fall 1999); *Designing The Mediation,* presented at professional seminars; *The Ethical Civil Trial Mediator, The Letter, The Spirit and The Practice,* presented at professional seminars; and *Mediation: The Humanization of the Justice System,* presented at professional seminars.

## II. FAMILIARITY WITH THE PRESENT LITIGATION

10. I was retained by counsel for the parties in this matter for the specific purpose of mediating the case and to assist in reaching a global resolution, if possible. In my capacity as mediator, I consider myself to be a neutral, representing neither plaintiff nor defendant.

11. I was retained to mediate this matter in March, 2015. I asked the counsel for the parties to provide me with a variety of information about the lawsuit which I reviewed in preparation of the mediation to learn the facts and law of the case as well as the respective position of the parties. Additionally, I had premeditation discussions with all counsel to organize the parties' efforts to fully resolve this matter. Thereafter, I scheduled a mediation session for May 12, 2015.

## III. THE MEDIATED SETTLEMENT NEGOTIATIONS

12. The proposed *Montoya* Settlement is the product of lengthy and particularly hard-

fought negotiations which took place on throughout the day of May 12, 2015. The caliber of the representation of both sides was extraordinary in my experience. The mediation consisted of both joint and separate caucuses with and between the parties.

13. While the mediation concluded with an executed term sheet, more specific documentation for filing with the Court was thereafter achieved by counsel of the respective parties.

14. A review of my records shows that, in total, I personally spent in excess of 11 hours coordinating, preparing, pre-mediating, and mediating the resolution of this case.

15. The negotiations during the course of the mediation were at all times professional as the parties exchanged their respective views on strengths and weaknesses of the case. I never witnessed or sensed any collusiveness between the parties. To the contrary, at each point during these negotiations, the settlement process was conducted at arm's-length and, while professionally conducted, was quite adversarial.

16. The relief for class members was the focus of the vast majority of the mediation sessions. The provisions of the settlement providing for payment of attorneys' fees and incentive payments to the Named Plaintiffs were negotiated only after the parties had agreed on the substantive relief to class members. There were no discussions of attorneys' fees, costs, or incentive awards until the substantive terms of the settlement were negotiated and resolved.

17. In my opinion, the settlement negotiations in this case resulted in a resolution that is fair, reasonable, and adequate for class members. The *Montoya* settlement, including the relief provided to the class, is a fair and non-collusive settlement that was conducted at arm's length by skilled, well-informed lawyers with sufficient discovery and investigation prior to completion of

the mediation, and through the intense, lengthy mediation process described above.

I declare under penalty of perjury under the laws of the United States of America, that the foregoing is true and correct.

Executed this 17th day of June, 2015.

Rodney A. Max

101004978v1