**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

**CASE No. 14-20474-CIV- GOODMAN**

**[CONSENT CASE]**

ENRIQUE MONTOYA, NEYSER
COLONIA and XI CHEN LAUREN,
on behalf of themselves and all others
similarly situated,

      Plaintiffs,

vs.

PNC BANK, N.A., et al.,

      Defendants.

_____/

## FINAL JUDGMENT

This action having settled pursuant to the Stipulation and Settlement Agreement (the "Settlement Agreement") and the Court having entered an Order Granting Final Approval To Class Action Settlement (the "Final Order") [ECF No. 271], IT IS HEREBY ORDERED, ADJUDGED AND DECREED that:

1.    This action, including all individual claims and class claims presented herein, is hereby dismissed on the merits and with prejudice against the Named Plaintiffs and all other Settlement Class Members, without fees (including attorneys' fees) or costs to any party except as otherwise provided in the Final Order [ECF No. 271].

a.      "Named Plaintiffs" mean Enrique Montoya, Neyser Colonia, Xi Chen Lauren and Mark Stuckey.

b.      "Settlement Class Members" are members of the "Settlement Class," which consists of the following:

All borrowers in the United States who, within the Settlement Class Period (as defined below), were charged by PNC under a hazard, flood, flood gap or wind-only LPI Policy for Residential property, and who, within the Settlement Class Period, either (i) paid to PNC the Net Premium for that LPI Policy or (ii) did not pay to and still owe PNC the Net Premium for that LPI Policy.  Excluded from the Settlement Class are: (i) individuals who are or were during the Settlement Class Period officers or directors of the Defendants in the Action or any of their respective Affiliates; (ii) any justice, judge, or magistrate judge of the United States or any State, their spouses, and persons within the third degree of relationship to either of them, or the spouses of such persons; (iii) borrowers who only had an LPI Policy that was canceled in its entirety such that any premiums charged and/or collected were fully refunded to the borrower or to the borrower's escrow account; and, (iv) all borrowers who file a timely and proper request to be excluded from the Settlement Class.

The Settlement Class Period shall commence on January 1, 2008 and continue through and include September 30, 2015, the date of the Preliminary Approval Order.

c.      "PNC" or "PNC Defendants" mean PNC Bank, N.A. and Alpine Indemnity Limited.  Additionally, when "PNC" is referenced herein in connection with conduct predating the acquisition of National City Corporation by The PNC Financial Services Group, Inc., "PNC" means National City Mortgage Company or any of its relevant affiliates.

d.    "Assurant Defendants" mean American Security Insurance Company, Standard Guaranty Insurance Company, and Voyager Indemnity Insurance Company.

e.    "Lender-Placed Insurance" or "LPI" means the placement of hazard, flood, flood gap, or wind-only insurance pursuant to a mortgage loan agreement, home equity loan agreement, or home equity line of credit serviced by PNC Mortgage, a Division of PNC Bank, National Association, or by National City Mortgage Company, to cover a borrower's failure to maintain the required insurance coverage on the Residential property securing the loan.

f.    "LPI Policy" means a lender-placed Residential hazard, flood, flood gap, and/or wind-only insurance policy issued by the Assurant Defendants placed pursuant to a mortgage loan agreement, home equity loan agreement, or home equity line of credit serviced by PNC Mortgage, a Division of PNC Bank, National Association, or by National City Mortgage Company, to cover a borrower's failure to maintain the required insurance coverage on the Residential property securing the loan.

g.    "Net Premium" means the amount of premium charged to a Settlement Class Member for an LPI Policy during the Settlement Class Period less any refund paid or credited to the Settlement Class Member.

2.    The Releases, which are set forth in Section 10 of the Settlement Agreement and which are also set forth below, are expressly incorporated herein in all

respects and are effective as of the date of this Final Judgment; and the Released Persons (as that term is defined below and in the Settlement Agreement) are forever released, relinquished, and discharged by the Releasing Persons (as that term is defined below and in the Settlement Agreement) from all Released Claims (as that term is defined below and in the Settlement Agreement).

(a)     <u>Release and Waiver Definitions</u>

(i)     "PNC Defendants" means the entities included in the definition at paragraph 1.c above.

(ii)     "Assurant Defendants" means the entities included in the definition at paragraph 1.d above.

(iii)     "Defendants" means all named defendants in the Montoya Litigation, including the PNC Defendants and the Assurant Defendants.

(iv)     "LPI Policy" means the policies included in the definition at paragraph 1.f above.

(v)     "Release" or "Releases" means the releases of all Released Claims by the Releasing Persons against the Released Persons.

(vi)     "Released Claims" means all claims, actions, causes of action, suits, debts, sums of money, payments, obligations, reckonings, promises, damages, penalties, attorney's fees and costs, liens, judgments, demands, and any other

forms of liability released pursuant Paragraph 2(b) of this Final Judgment, and Section 10 of the Settlement Agreement.

(viii)  "Released Persons" means (a) the PNC Defendants, the Assurant Defendants, National City Mortgage Company, National City Insurance Group, Inc., Allinco, Inc., David P. Huttenlocher, Assurant, Inc., and each of their respective past or present divisions, parents, subsidiaries, predecessors, investors, parent companies, acquired companies, and affiliated companies (which shall include any person or entity which controls, is controlled by, or is under common control with any such party), including but not limited to the PNC Defendants, the Assurant Defendants and any direct or indirect subsidiary of any of Defendants and each of their respective past or present divisions, parents, subsidiaries, investors, parent companies, and affiliated companies, and all of the officers, directors, employees, agents, brokers, distributors, representatives, and attorneys of all such entities; and (b) any other insurance carriers that issued or may have issued LPI insuring real property owned by any Settlement Class Member for the PNC Defendants and/or for any of the PNC Defendants' past or present divisions, parents, subsidiaries, predecessors, investors, parent companies, acquired companies, and affiliated companies (which shall include any person or entity which controls, is controlled by, or is under common control with any such party), including but not limited to any direct or indirect subsidiary of any of

them, and all of the officers, directors, employees, agents, brokers, distributors, representatives, and attorneys of all such entities.

(ix)   "Releasing Persons" means the Named Plaintiffs and all Settlement Class Members, and their respective family members, heirs, guardians, executors, administrators, predecessors, successors, and assigns.

(x)   "Settling Parties" means, collectively, Defendants, Named Plaintiffs, all Settlement Class Members, and all Releasing Persons.

(b)   <u>Released Claims of Releasing Persons.</u>  Each Releasing Person shall, by operation of this Final Judgment, be deemed to have fully, conclusively, irrevocably, forever, and finally released, relinquished, and discharged the Released Persons from any and all claims, actions, causes of action, suits, debts, sums of money, payments, obligations, reckonings, promises, damages, penalties, attorney's fees and costs, liens, judgments, and demands of any kind whatsoever that each Settlement Class Member may have until the close of the Settlement Class Period or may have had in the past, whether in arbitration, administrative, or judicial proceedings, whether as individual claims or as claims asserted on a class basis, whether past or present, mature or not yet mature, known or unknown, suspected or unsuspected, whether based on federal, state, or local law, statute, ordinance, regulations, contract, common law, or any other source, that were or could have been sought or alleged in the Litigation or that relate, concern,

arise from, or pertain in any way to the Released Persons' conduct, policies, or practices concerning LPI Policies placed or charged during the Settlement Class Period.

    (i)  The Release stated in Paragraph 2(b) above shall include, but not be limited to, all claims related to charges for the placement of LPI Policies during the Class Period regardless of whether the LPI Policy was entirely or partially canceled; PNC's insurance requirements; any reinsurance agreements involving the PNC Defendants concerning the LPI Policies; the relationship, whether contractual or otherwise, between the PNC Defendants and the Assurant Defendants regarding LPI, including, but not limited to, the procuring, underwriting, placement, insurance tracking, or costs of LPI Policies; the coverage amount, duration, issue date, alleged "backdating," or alleged excessiveness of any LPI Policies placed or charged by the PNC Defendants; the payment or receipt of commissions, income or benefits relating to reinsurance agreements, expense reimbursements, alleged "kickbacks," or any other compensation under any LPI Policies placed or charged by the PNC Defendants; any alleged "tying" arrangement involving the PNC Defendants and LPI; any alleged breach of contract, breach of an implied covenant of good faith and fair dealing, breach of fiduciary duty, unjust enrichment, or any other alleged breach of any common law duty or obligation or any alleged violation of any federal or state statute or regulation, by PNC concerning LPI Policies; any alleged tortious interference by the Assurant Defendants with mortgage loans or contracts serviced by the PNC Defendants; the

disclosure or non-disclosure of any payment, expenses, fees, charges, or features pertaining to or under any LPI Policies placed or charged by the PNC Defendants; the receipt or non-disclosure of any benefit under any LPI Policies placed or charged by the PNC Defendants; the content, manner, or accuracy of any communications regarding the placement of any insurance policy by the PNC Defendants; and to the regulatory approval or non-approval of any LPI Policy, or the premium thereon, placed or charged by the PNC Defendants.

(ii)     The Release in Paragraph 2(b) above shall not cover claims arising after the Final Settlement Date (as defined in the Settlement Agreement) or claims for benefits made under any LPI Policy placed or charged by the PNC Defendants.  Nothing in Paragraph 2(b) shall be deemed a release of any Settlement Class Member's respective rights and obligations under this Final Judgment, the Final Order and the Settlement Agreement.

(iii)     Except to the extent that any such obligation is being released pursuant to Paragraph 2(b) above, this Final Judgment shall not be deemed a release of Defendants from any existing obligation to any Releasing Person under any loan, note, mortgage, or deed of trust.  This provision is not meant to and does not limit the Releases in this Final Judgment, the Final Order or in the Settlement Agreement.

(c)     Without in any way limiting its scope, the Release stated in Paragraph 2(b) above covers by example and without limitation, any and all claims for

8

attorneys' fees, costs, expert fees, or consultant fees, interest, or litigation fees, or any other fees, costs, and/or disbursements incurred by Class Counsel, the Named Plaintiffs, or any Settlement Class Members in connection with or related in any manner to the Montoya Litigation, the settlement of the Montoya Litigation, the administration of such Settlement, and/or the Released Claims, except to the extent otherwise specified in the Final Order.

(d)     In connection with the Release stated in Paragraph 2(b) above, the Releasing Persons expressly waive, and shall be deemed to have waived to the fullest extent permitted by law, any and all provisions, rights, benefits conferred by Section 1542 of the California Civil Code, and any statute, rule and legal doctrine similar, comparable, or equivalent to California Civil Code Section 1542, which provides that:

> **A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor**.

The Releasing Persons agree, and shall be deemed to agree, that the provisions of all such principles of law or similar federal or state laws, rights, rules, or legal principles, to the extent they are found to be applicable herein, are hereby knowingly and voluntarily waived, relinquished, and released.  The Releasing Persons will be deemed to recognize, that, even if they may later discover facts in addition to or different from those which they now know or believe to be true, they nevertheless agree

that, upon entry of the Final Order, they fully, finally, and forever settle and release any and all claims covered by the Releases.

(e)     The Releases were bargained for and are a material element of the Settlement Agreement.

(f)     The administration and consummation of the Settlement as embodied in the Settlement Agreement shall remain under the authority of the Court.

(g)     The Settlement Agreement shall be the exclusive remedy for any and all Releasing Persons and the Released Persons shall not be subject to liability or expense for any of the Released Claims to any Releasing Person.

(h)     The Releases shall not preclude any action to enforce the terms of the Settlement Agreement, including participation in any of the processes detailed therein.  The Releases set forth in this Final Judgment, the Final Order and in the Settlement Agreement are not intended to include the release of any rights or duties of the Settling Parties arising out of the Settlement Agreement, including the express warranties and covenants contained herein.

3.     Neither the Settlement Agreement, nor any of its terms and provisions, nor any of the negotiations or proceedings connected with it, nor any of the documents or statements referred to therein, nor the Final Order, nor any of its terms and provisions, nor this Final Judgment, nor any of its terms and provisions, shall be:

(a)     offered by any person or received against the Defendants as evidence or construed as or deemed to be evidence of any presumption, concession, or admission by the Defendants of the truth of the facts alleged by any person or the validity of any claim that has been or could have been asserted in the Montoya Litigation or in any litigation, or other judicial or administrative proceeding, or the deficiency of any defense that has been or could have been asserted in the Litigation or in any litigation, or of any liability, negligence, fault or wrongdoing of the Defendants;

(b)     offered by any person or received against the Defendants as evidence of a presumption, concession, or admission of any fault, misrepresentation, or omission with respect to any statement or written document approved or made by the Defendants or any other wrongdoing by the Defendants;

(c)     offered by any person or received against the Defendants as evidence of a presumption, concession, or admission with respect to any liability, negligence, fault, or wrongdoing in any civil, criminal, or administrative action or proceeding;

(d)     offered or received in evidence in any action or proceeding against any Party hereto in any court, administrative agency, or other tribunal for any purpose whatsoever, other than to enforce or otherwise effectuate the Settlement Agreement (or any agreement or order relating thereto), including the Releases, or the Final Order, or this Final Judgment.

4.      <u>Permanent Injunction</u>.  The Releasing Persons have released the Released Claims as against the Released Persons, and are, from this day forward, hereby permanently barred and enjoined from directly or indirectly (i) filing, commencing, prosecuting, intervening in, or participating in (as class members or otherwise), any lawsuit in any jurisdiction based on or relating to the claims and causes of action, or the facts and circumstances relating thereto, in this action and/or the Released Claims; or (ii) organizing any Settlement Class Members into a separate class for purposes of pursuing as a purported class action any lawsuit (including by seeking to amend a pending complaint to include class allegations, or seeking class certification in a pending action) based on or relating to the claims and causes of action, or the facts and circumstances relating thereto, in this action and/or the Released Claims.

5.      All Releasing Persons shall promptly dismiss with prejudice all claims, actions, or proceedings that have been brought by any Releasing Person in any jurisdiction and that have been released pursuant to the Settlement Agreement and Final Order and enjoined pursuant to this Final Judgment.

6.      Notwithstanding the dismissal of this entire action with prejudice, the Court shall retain jurisdiction over the construction, interpretation, consummation, implementation, and enforcement of the Settlement Agreement, including jurisdiction to enter such further orders as may be necessary or appropriate.

**DONE and ORDERED**, in Chambers, in Miami, Florida, April 14, 2016.

_____
Jonathan Goodman
UNITED STATES MAGISTRATE JUDGE

**Copies furnished to**:
All counsel of record